IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF WAUKEGAN,<br>an Illinois municipal corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LARRY MARTINOVICH,<br><br>    Defendant. | No.   03 C 3984<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

On June 11, 2003, plaintiff, the City of Waukegan, Illinois, filed a five count complaint against defendant Larry Martinovich ("Martinovich"), the owner of property located in Waukegan (the "Martinovich Property"). Plaintiff seeks declaratory and injunctive relief as well as cost recovery for the disposal and release of contaminants to and from the Martinovich Property, pursuant to state and federal environmental and tort law. After lengthy settlement efforts failed, defendant filed a counterclaim on July 15, 2005, alleging similar environmental violations by plaintiff concerning a property owned by plaintiff that is adjacent to the Martinovich Property.

On November 4, 2005, plaintiff filed the instant motion to disqualify Carol L. Dorge ("Dorge"), who first appeared as counsel for defendant in June 2005, pursuant to Rule 83.51.9 of Professional Conduct for the Northern District of Illinois and Rule 1.9 of the Illinois Code of Professional Responsibility. Plaintiff argues that Dorge is barred from representing defendant because she previously served as a consultant to plaintiff regarding plaintiff's efforts to redevelop and environmentally remediate the downtown Waukegan area that includes the Martinovich

Property. For the reasons stated below, the court grants plaintiff's motion to disqualify Dorge.

## STATEMENT OF FACTS

The following facts are those relevant to the instant motion only. The instant action arises from the Waukegan Downtown and Waterfront Revitalization Project. As part of the project, plaintiff received a $200,000 grant from the U.S. Environmental Protection Agency ("EPA") for the redevelopment of brownfields in the downtown Waukegan area, an effort known as the Brownfields Redevelopment Initiative ("Initiative").

In furtherance of the Initiative, plaintiff entered into an agreement with a professional planning firm, Vandewalle & Associates ("Vandewalle"), to oversee the implementation of the EPA grant. Plaintiff's agreement with Vandewalle stated that the Lakeside Group, a division of Vandewalle, would work "in conjunction with Carol Dorge, Attorney at Law." The agreement enumerated several tasks or work elements, and specified that Dorge would complete work element seven ("Task Seven"). The scope of Task Seven was described by Dorge in a proposal memorandum dated July 8, 1999, which was on her legal stationary. Dorge's proposal describes her qualifications, including that she is "an attorney who specializes in Environmental Law, including Brownfields," and highlights her experience with the "legal tools" like eminent domain, quick take, zoning, nusiance control, and code enforcement that are used in brownfield redevelopment projects "to be proactive, and to alleviate liability concerns."

Plaintiff accepted Dorge's proposal as her retention agreement ("Retention Agreement"), and Dorge worked for plaintiff on the Initiative through February 2000. According to the Retention Agreement, Dorge's activities included: (1) identifying "technical, legal, financial and other tools which will facilitate the redevelopment of parcels of property"; (2) educating owners,

prospective owners and the public on the risk-based approach to clean-up; (3) negotiating access agreements with owners of privately owned parcels of property; and (4) exploring "involuntary measures of securing access and remediation with the City and Corporate Counsel and assist where appropriate." Most of Dorge's correspondence to plaintiff regarding the Initiative, including her invoices, was on her legal letterhead.

Dorge filed a breach of contract suit against plaintiff in the Circuit Court of Lake County regarding her fees for her work on the Initiative. In her first amended state court complaint, filed April 22, 2004, Dorge cites excerpts of conflict waivers that she had requested regarding her representation of other owners of property in the area targeted by the Initiative who were involved in environmental access negotiations with plaintiff.[1] In one excerpt, Dorge stated that Kathleen and Ronald Rice (the "Rices") wished to retain Dorge to represent them in negotiations with plaintiff, and that plaintiff had also filed a lawsuit against Kathleen Rice, which involved the Rices' property. Dorge states that "there is a potential for a conflict of interest" and that her representation of the Rices was contingent on receiving a waiver from the Rices and plaintiff. Another excerpt indicated that Dorge sought to represent Michael Coan ("Coan") and North County Development Group, LLC in negotiations with plaintiff. In the excerpt, Dorge conceded that there is "a potential conflict of interest," and asked plaintiff to acknowledge a waiver of the conflict. The state court found in Dorge's favor, and awarded her $14,000 in fees.

While working as a consultant for plaintiff, Dorge had conversations with defendant Martinovich and assisted plaintiff in effectuating the access agreement between plaintiff and

---

[1] Neither the state court complaint nor the briefs in the instant motion make clear the source of these excerpts, although it appears that they were part of correspondence from Dorge to plaintiff.

3

defendant. This agreement permitted plaintiff's consultants to conduct environmental assessments of the Martinovich Property, as well as the adjacent property that is the subject of defendant's counterclaim. The data derived from these assessments is the basis of plaintiff's complaint against defendant. Defendant testified in his affidavit that Dorge asked him to "cooperate in an environmental investigation," which she told him would probably be required if he wanted to finance or sell his property. Defendant also testified that Dorge told him that she was not representing plaintiff for purposes of purchasing his property.

Dorge filed an appearance on behalf of defendant in the instant action on June 24, 2005, approximately a year after the suit was filed and after extensive settlement negotiations by plaintiff with defendant and his former counsel. On October 21, 2005, plaintiff sent an e-mail to Dorge requesting that she withdraw her appearance as counsel for defendant. The e-mail also stated that plaintiff was unwilling to waive the conflict, and that it would file a motion to disqualify Dorge is she did not voluntarily withdraw. Plaintiff stated that it was very concerned about "the obvious conflict" between Dorge's present representation of Martinovich and her role involving the same property on behalf of plaintiff, and noted that Dorge may be called as a witness on behalf of plaintiff.

Dorge did not withdraw. Instead, she wrote a letter, dated October 26, 2005, to the Diver Group ("Diver"), a law firm that had served as counsel to plaintiff regarding aspects of the Initiative. Dorge asked Diver to help "facilitate a meeting with [plaintiff] and facilitate a waiver of conflict" to represent defendant in the instant suit. Dorge stated that a waiver was "not required, but would put the ethical accusations to bed." Dorge did not copy plaintiff or its counsel, Jeep & Blazer, LLC ("Jeep & Blazer"), on her October 26 letter. Diver responded by

letter dated October 26, 2005, and directed Dorge to contact Jeep & Blazer. Plaintiff wrote Dorge an e-mail dated October 31, 2005, stating that Jeep & Blazer had forwarded a copy of her October 26, 2005, letter. Plaintiff's e-mail stated that Dorge's request for a waiver of conflict was rejected, and noted that "given the statements in your letter [to Diver] we will assume that you will not voluntarily withdraw your appearance and we will therefore immediately file a motion to disqualify."

## **DISCUSSION**

Plaintiff argues that based on the nature and extent of Dorge's prior representation and her actions on behalf of plaintiff specifically related to the Initiative that involved the environmental condition of the properties at issue in the claims and the counterclaims, she is barred from representing Martinovich in the instant action. For the reasons discussed below, plaintiff is correct.

Rule 83.51.9 of the Local Rules of Professional Conduct for this Court provides in relevant part:

> Conflict of Interest: Former Client
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.

Although neither party saw fit to cite a single case regarding the standards for attorney disqualification, the Seventh Circuit has established a frequently cited, three-part analysis to determine whether to disqualify an attorney. See Cromley v. Board of Education of Lockport Township High School District 205, 17 F.3d 1059, 1064 (7th Cir. 1994). First, the court determines whether a substantial relationship exists between the subject matter of the prior and

present representations. Id. If the court concludes that a substantial relationship exists, it must determine if the presumption of shared confidences with respect to prior representation has been rebutted. Id. If the court concludes this presumption has not been rebutted, the court must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Id. If the attorney whose role is challenged is unable to rebut this second presumption, disqualification is proper. Id. Plaintiff bears the burden of establishing each element. Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.3d 221, 224 (7th Cir. 1978).

Plaintiff asserts that it was previously represented by Dorge as an attorney. The party seeking disqualification has the burden of proving the existence of a former attorney-client relationship. Indeck Power Equipment Co. v. Del Monico, 2004 WL 2032122, at *2 (N.D.Ill. Aug. 20, 2004) (citing Schwartz v. Cortelloni, 177 Ill.2d 166 at 174). Defendant counters that Dorge's work for the Initiative was "administrative and as a stakeholder," and Dorge states in her affidavit[2] that she did "not provide legal counsel" to plaintiff. Dorge's attempt to characterize herself as a consultant rather than an attorney, however, is undermined by several uncontested

---

[2]Plaintiff asks the court to disregard the three affidavits - from Dorge, Martinovich, and Coan - submitted by defendant in support of his opposition to the motion to disqualify. The court agrees that the affidavits contain extensive hearsay, legal conclusions, irrelevant factual assertions, and other inadmissible material in violation of Fed. R. Civ. P. 56(e). The court also agrees that Dorge's fourteen-page affidavit reads more like a "soliloquy" than factual testimony, and contains legal arguments absent from defendant's brief. In addition, each affiant states that the affidavit is based on "personal knowledge and belief" or made to the "best of [the affiant's] knowledge and belief." Several courts have observed pointedly that a statement that things are based on someone's "personal knowledge and belief" is not really an affidavit at all, and thus "wholly ineffective as a sworn statement of the actual truthfulness of the assertions referred to." Eckhardt v. NSI Elec. Contractors, Inc., 2005 WL 1387625, at *5 n. 6 (E.D.Wis. June 9, 2005) (quoting Draghi v. County of Cook, 991 F. Supp. 1055, 1057) (N.D.Ill. 1998). Although the court declines to disregard the affidavits entirely, it considers them only to the extent that they are relevant and based on personal knowledge.

6

facts.

First, the Retention Agreement describes Dorge's accomplishments as an attorney, and states that she will work on legal issues, including involuntary measures of securing access and remediation, and employ "legal tools." Second, nearly all of Dorge's correspondence with plaintiff, including the Retention Agreement and her invoices, were on her legal letterhead. Third, Dorge sought conflict waivers regarding her legal representation of two other property owners and indicated that she saw potential conflicts of interest based on her prior representation of plaintiff. Fourth, Russ Tomlin, director of the Department of Planning and Zoning for plaintiff, submitted an affidavit stating that plaintiff retained Dorge as an attorney and dealt with her in that capacity. Accordingly, plaintiff has established that pursuant to the Retention Agreement Dorge was working on plaintiff's behalf and representing plaintiff in her capacity as an attorney.

The party seeking disqualification bears the burden of establishing that the present and former representations are substantially related. LaSalle National Bank v. County of Lake, 703 F.2d 252 (7th Cir. 2003). The Seventh Circuit has explained that the prior and present subject matters are "substantially related" if the lawyer could have obtained confidential information in the first representation that is potentially relevant in the second. Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1266 (7th Cir. 1983); see also Safe-T Products, Inc. v. Learning Resources, Inc., 2002 WL 31386473, at *3 (N.D.Ill. Oct. 23, 2002). The Analytica court noted that it is irrelevant whether the attorney actually obtained such information and used it against her client. 708 F.2d at 1266.

In the instant case, Dorge states in her affidavit that to her knowledge all of the

7

Initiative's work was "public," and that she did not receive confidential information from plaintiff. Coan, a property owner involved in the Initiative, also states in his affidavit that all of the information was public, that Dorge had no need for confidential information, and that he never knew her to have any such information. Defendant provides no support or explanation of Dorge's self-serving assertions, or for the conclusory statements of Coan, who was not privy to all of the interactions between Dorge and plaintiff. In addition, the substantial relationship standard does not require that a party moving to disqualify another party's attorney point to or reveal a particular piece of confidential information that the challenged attorney actually received; its receipt will be presumed in circumstances that make it a likely possibility. Safe-T, 2002 WL 31386473 at *4 (citing LaSalle, 703 F.2d at 256). Given the scope of the work set forth the Retention Agreement, the inference that confidential information would have been exchanged between Dorge and plaintiff is inescapable. See Safe-T, 2002 WL 31386473 at *4 (reasonable to infer that confidential information was shared with a lawyer by client).

Regarding the third prong of the Seventh Circuit's substantial relationship test, plaintiff must establish that the confidential information to which Dorge was presumably privy while working for plaintiff is potentially relevant to the instant litigation. The Seventh Circuit has held that prior and current representations were substantially related even though they did not involve precisely the same issues. See, e.g., Analytica, 708 F.2d at 1268-69; LaSalle, 703 F.2d at 256. The Analytica court also noted that the representations were substantially related even though it was not known "whether any of the information [the challenged attorney] received would be useful in [the plaintiff's] lawsuit..." 708 F.2d at 1268-69. Here, Dorge worked for plaintiff on the same redevelopment project from which the instant lawsuit arises, and she specifically

worked with the property owners, including defendant, during the course of her representation of plaintiff. Dorge's assertion in her affidavit that she "did not conduct environmental assessments, develop remedial design or effectuate remediation of properties" does not alter the undisputed fact that she was intimately involved with attempts to broker agreements to access and remediate properties including those at issue in the pending litigation and involving the identical parties. Accordingly, Dorge's prior and present representations are substantially related.

Because the court finds a substantial relationship between the former and current representations, the burden is on defendant to rebut the presumption of shared confidences. LaSalle, 703 F.2d at 256. Defendant does not directly address this element in his opposition to the motion to disqualify, except to repeat his contention that Dorge did not receive confidential information. Although defendant has the burden to rebut the presumption, the argument portion of defendant's brief contains only one general citation to the record. Instead, defendant states that the affidavits are "very detailed and should be read in their entirety." As is often repeated, "judges are not compelled to root through the record like a pig hunting for truffles." See, e.g., Lopez v. Micro Center Sales Corp., 2003 WL 22706957, at *1 n. 2 (N.D.Ill. Nov. 17, 2003). Defendant similarly fails to address the presumption of shared confidences with respect to the current litigation. Accordingly, defendant has not rebutted the presumption of shared confidences.

The court recognizes that attorney disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary," Owen v. Wagerin, 985 F.2d 312, 317 (7th Cir. 1993), and that it may create unnecessary delays and deprive parties of their chosen legal advisor. Guillen v. City of Chicago, 956 F. Supp. 1416, 1421 (N.D.Ill. 1997). In the instant

case, however, defendant is represented by two other lawyers in addition to Dorge, and Dorge is not trial counsel. Other than defendant's affidavit testimony that he "value[s] her representation" and it would be "unfair" to disqualify her, defendant presents no evidence that Dorge's disqualification would cause unnecessary delay or otherwise prejudice defendant. Because plaintiff has established a substantial relationship between Dorge's prior and current representations, and defendant has failed to rebut the presumptions of shared confidences, the court grants plaintiff's motion to disqualify Dorge.

## CONCLUSION

For the reasons stated above, the court grants plaintiff City of Waukegan's motion to disqualify Carol L. Dorge as counsel for defendant Larry Martinovich.

**ENTER:** **December 16, 2005**

*[signature]*

**Robert W. Gettleman**
**United States District Judge**